**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

DEREK HALL,

*Plaintiff*,

vs.                                                                    Case No. 08-2073-EFM

INTERSTATE BRANDS CORPORATION,

*Defendant.*

**MEMORANDUM AND ORDER**

Presently before the Court is Defendant Interstate Brands Corporation's ("IBC") Motion for Summary Judgment (Doc. 35) and Plaintiff Derek Hall's ("Hall") Motion to Amend Scheduling Order and Pretrial Order (Doc. 31). For the following reasons, the Court grants IBC's motion, and denies Hall's motion as moot.

**I.  Background**

The following facts are either uncontroverted or taken in the light most favorable to the non-moving party.

In June 1999, IBC hired Hall, an African American, as a route sales representative to deliver its products to customers. During his time as a route sales representative, IBC issued thirteen disciplinary actions against Hall, primarily relating to customer service issues, failure to follow

company policy or supervisor instructions, and vehicular accidents.[1]  On May 20, 2005, Hall voluntarily transferred to a position as a loader with the company, which was covered by a collective bargaining agreement,[2] and paid on an hourly basis.  In this position, Hall was required to load IBC products onto sales trucks at IBC's Kansas City, Kansas sales depot, to be delivered to customers by the route sales representatives.  While a loader, Hall filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on May 6, 2007, alleging he had been discriminated against because of his race, subjected to a hostile work environment, and retaliated against for complaining of discrimination to a member of IBC's management.  Hall subsequently filed the instant lawsuit on February 12, 2008.

As a loader, Hall received a number of disciplinary actions in addition to those he previously received as a route sales representative.  It is these subsequent actions that are the basis for Hall's discrimination claims.  On January 19, 2006, Hall received a verbal reprimand for backing a truck into a garage door at the Kansas City depot, which caused considerable damage to the door.  Hall admits that he struck the door, and agrees that he does not believe IBC issued the reprimand because of his race or that the reprimand was retaliatory.  IBC required Hall to submit to a drug screen, but he received no discipline as a result of the drug screen.

On January 30, 2007, Hall received a written reprimand for failing to load product onto a truck as instructed by his supervisor.  Hall admitted to failing to load the product, but claimed such

---

[1]These disciplinary actions were primarily in the form of verbal and written reprimands, with the last being a three-day suspension.

[2]As a route sales representative, Hall was covered under a collective bargaining agreement between IBC and Teamsters Union, Local 955.  As a loader, he was under a collective bargaining agreement between IBC and the Bakery, Confectionery, Tobacco Workers & Grain Millers Union, Local 218.

failure was not intentional but was a mistake. After reviewing Hall's claim of mistake, IBC rescinded the reprimand.

Hall received another written reprimand on April 16, 2007, for poor work performance. Specifically, the reprimand provided that Hall failed to complete all assigned tasks, in that he failed to properly record "adds/cuts" on his dock report. In addition, Hall improperly filled out his Loader Performance Standard Report by recording that 200 trays were loaded per hour when instead, he loaded only 163 trays per hour. Hall hung up the telephone on his supervisor while being questioned on these events prior to the written reprimand being issued.

IBC investigated a complaint made against Hall by one of its Hispanic retail sales clerks, Marcia Carter, in July 2007. In this complaint, Carter alleged that Hall had trapped her near the sales register so that she could not move. After its investigation, IBC did not issue any disciplinary action against Hall.

On August 1, 2007, Hall received another disciplinary action for bringing a BB-gun to work, without permission from management and in violation of IBC's employee handbook. Hall's supervisor, Al Raphel ("Raphel"), a Hispanic, instructed Hall in December 2006 that it was unacceptable to bring a BB-gun to work, but Raphel did not issue any disciplinary action to Hall at that time. Hall claims that while he did not ignore Raphel's instruction, he continued to bring the BB-gun to work to protect himself from raccoons that were hanging around and coming into the depot. Hall received a two-week suspension for this conduct.

On February 4, 2008, Hall received another disciplinary action, his eighteenth since becoming an employee of IBC, for poor job performance. Hall was instructed by Raphel to unload items from of a truck and then load specific alternative items onto the truck. Hall refused, informing

Raphel that he had already loaded the truck and does not get paid to take items off a truck once loaded. Hall received a written reprimand for this conduct.

Finally, on October 6, 2008, Hall was involved in a verbal altercation with a route sales representative, Greg Rosa ("Rosa"), at the sales depot. During the altercation, each yelled obscenities at one another, after which Raphel instructed Hall to stop yelling obscenities, finish his paperwork, then come to the office to speak with him about the situation and to provide his statement of the incident. Raphel further informed Hall that, in the meantime, he would obtain a statement from Rosa. Being upset over the situation, Hall left work for the day without permission and prior to finishing his paperwork, and without reporting to Raphel's office to give his statement of the event as he was instructed to do. Hall also did not inform Raphel that he was leaving. Upon discovering that Hall had left the depot, Raphel called Hall, leaving a message for him to return. Hall received the message, but he did not return to work. On October 22, 2008, IBC terminated Hall's employment for insubordination, unsatisfactory job performance, and inappropriate personal conduct, citing the October 6, 2008 incident.

Hall subsequently brought this employment discrimination action against IBC in which he alleges discrimination based on race through improper discipline, retaliation resulting from his filing an EEOC complaint, hostile work environment, and wrongful termination.

## II. Summary Judgment Standard

The Court is familiar with the standards governing the consideration of Summary Judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."[3]  An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[4]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim.[5]  In considering a motion for summary judgment, the Court must examine all of the evidence in a light most favorable to the nonmoving party.[6]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to summary judgment.[7]  The moving party is not required to disprove the nonmoving party's claim or defense, but must only establish that the factual allegations have no legal significance.[8]  If this initial burden is met, the nonmovant must then set forth specific facts showing that there is a genuine issue for trial.[9]  In doing so, the opposing party may not rely on mere allegations or denials in its pleadings, but must present significant admissible probative evidence supporting its allegations.[10]   The Court is also cognizant that it may not make credibility determinations or weigh the evidence when examining the underlying facts of the case.[11]

---

[3]Fed. R. Civ. P. 56(c).

[4]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

[5]*Id.*

[6]*Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001).

[7]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[8]*Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

[9]*Celotex*, 477 U.S. at 323.

[10]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[11]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[12]

### III.  Analysis

#### 1.  Summary Judgment Motion

##### a. Title VII Discrimination

Hall brings a disparate treatment claim alleging IBC discriminated against him based on his race by treating him differently with respect to discipline than his non-black coworkers.  IBC argues that Hall cannot establish a prima facie case for racial discrimination, that the reason for his discipline and ultimate termination were for non-discriminatory reasons, and that Hall has no evidence to establish that the reasons were pretextual.  IBC contends that Hall was treated no differently than other similarly situated employees, and denies that Hall was either disciplined or ultimately terminated because of his race.  IBC asserts that the past disciplinary actions and termination were the result of Hall's conduct, which Hall does not deny, and that race was not a factor in its decisions.  IBC further argues that it is not aware of, nor has Hall presented, any evidence beyond mere conjecture or speculation indicating IBC has not disciplined or otherwise taken action for the same types of misconduct committed by other caucasian employees. Accordingly, summary judgment is appropriate.

As Hall has offered no direct evidence of discrimination with respect to his claims, the Court analyzes them under the burden-shifting framework first recognized in *McDonnell Douglas Corp.*

---

[12]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

*v. Green*.[13]   Under this approach, a plaintiff must first make out a prima facie case by showing membership in a protected class, an adverse employment action occurring under circumstances creating an inference of discrimination, and differing treatment among similarly situated employees.[14]   For an act to constitute an adverse employment action, it must cause "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[15] "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."[16]   In determining whether two employees are similarly situated, a "court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees."[17]

If the plaintiff is able to establish a prima facie case of discrimination, the burden then shifts to the defendant to demonstrate a legitimate non-discriminatory reason for the adverse employment action.[18]   The defendant's burden is extremely light,[19] and once met, the burden shifts back to the

---

[13]411 U.S. 792, 802-04 (1973); *see Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).

[14]*McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (citing *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997)); *see also Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002).

[15]*Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (internal quotations omitted).

[16]*McGowan*, 472 F.3d at 745.

[17]*Id.*

[18]*See Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (citing *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000)).

[19]*Goodwin v. Gen. Motors Corp.*, 275 F.3d 1005, 1013 (10th Cir. 2002).

plaintiff to show that the defendant's proffered reason was pretextual.[20]   A plaintiff can satisfy this burden by producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[21]

The Court agrees with IBC that Hall has failed to satisfy his burden with respect to his disparate treatment claim.  It is undisputed that Hall, being an African American, is a member of a protected class and that he was qualified for the position he held with IBC.  In addition, while IBC does not dispute that the two-week suspension given Hall as a disciplinary action for bringing a BB-gun to work was an adverse employment action, it argues that it did not treat Hall any differently than any other similarly situated employee with regard to this action.  As a result, Hall's claim fails on the third prong of this analysis.  IBC further denies that any other disciplinary action taken against Hall resulted in an adverse employment action.

Here, Hall received a number of verbal and written reprimands throughout his disciplinary history with IBC.  A written warning, or reprimand, is an adverse employment action "*only* if it effects a significant change in the plaintiff's employment status,"[22] such as "if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects

---

[20]*See Orr*, 417 F.3d at 1149; *see also Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995) (To establish an genuine issue of pretext, a plaintiff must demonstrate that a defendant's "proffered non-discriminatory reason is unworthy of belief.")

[21]*Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

[22]*E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (emphasis in original).

the plaintiff's future employment opportunities."[23]  There is no support in the record to indicate that any of these verbal or written reprimands issued to Hall had any effect on his current or future employment status.  As Hall admits, his transfer from a route sales representative to loader was voluntary, and he makes no claim that such transfer was the result of any act by IBC.  In fact, Hall received thirteen disciplinary actions prior to his transfer, and four additional actions after his transfer with no indication that those reprimands had any impact on Hall's employment or that IBC took any further action as a result of that discipline.  Accordingly, we find that none of the verbal or written reprimands issued to Hall by IBC, with the exception of his August 1, 2007 suspension, were adverse employment actions implying discrimination.

Although we find that none of Hall's verbal or written reprimands constitute adverse employment actions, we will nonetheless address Hall's arguments regarding his January 2006 verbal reprimand and request for drug screen for causing damage to a garage door.  Hall claims that he has been told of three other employees, Kevin Ray ("Ray"), Thomas Handzel ("Handzel"), and Rad Villafane ("Villafane"), who each also caused damage to company property, but whom IBC failed to either discipline or require submission to drug testing as was required of Hall.  IBC first asserts, which Hall does not dispute, that Hall was never disciplined for a drug screen, and therefore, no adverse employment action resulted.  IBC next argues, to which Hall once again agrees, that these employees work under a different collective bargaining agreement than Hall, and each holds a position different from Hall in that these employees were route sales representatives while Hall was working as a loader.

---

[23]*Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir. 2005).

IBC contends that it has no record or knowledge of Handzel ever being involved in a vehicular accident at the Kansas City depot during the time it employed Hall.  IBC further denies that it has disciplined Handzel any differently than Hall.  Hall agrees that IBC has no record Handzel was involved in an accident, but argues that other employees have told him that it had in fact occurred.  Hall, however, has provided the Court with no admissible evidence relating to this claim. Instead, he relies on his own deposition testimony and the deposition testimony of Brian Soza ("Soza"),[24] another IBC employee, in which each refers to hearing about the accident from other employees.  There is no evidence in the record that either Hall or Soza have personal knowledge of Handzel being involved in an accident, nor has Hall provided the Court with any sworn statement or other evidence from any individual with personal knowledge of such incident.[25]  We conclude that Hall's support is hearsay, would be inadmissible at trial, and cannot be used to defeat summary judgment.[26]

With respect to Villafane and Ray, IBC argues that, notwithstanding the fact that Hall's verbal reprimand had no adverse employment action, Hall's claim that he was treated differently than Villafane and Ray is based on hearsay and is unsupported by the record. IBC argues that it has no record or knowledge of either Villafane or Ray being involved in accidents and not being

---

[24]Mr. Soza's deposition was not taken as part of this case, but was taken in relation to his own lawsuit filed against IBC in this Court for the same or similar claims as Hall alleges.

[25]IBC has submitted as support of its claim that it has not treated Handzel differently from Hall, a declaration from Amie Gifford, HR Manager for IBC, in which she states that Raphel has taken disciplinary action against Handzel, both before and after the discipline taken against Hall, for work performance issues.

[26]*See Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).  "Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because a third party's description of a witness' supposed testimony is 'not suitable grist for the summary judgment mill.'  *Id.* (citing *Wright-Simmons v. City of Oklahoma City*, 155 5.3d 1264, 1268 (10th Cir. 1998) (quoting *Thomas v. I.B.M.*, 48 F.3d 478, 485 (10th Cir. 1995) (internal quotations omitted))).

subjected to drug tests.  IBC further explained that Raphel issued a written reprimand to Ray in November 2005 for poor job performance, issued Ray a written reprimand for a vehicle accident in 2008, for which he was required to submit to drug testing, and terminated Ray in February 2009 for violating company policy.[27]  Hall does not contest that IBC has no knowledge that Villafane or Ray was involved in accidents and not subjected to drug tests, but once again contends that other employees have informed him that the incidents occurred, including Raphel himself.  Hall, however, fails to provide any support for his claims absent his and Soza's deposition testimony in which each simply refers to the inadmissible hearsay of other coworkers.  Accordingly, the evidence Hall proffers in support of his claims does not satisfy his burden to demonstrate that he was treated differently than other similarly situated employees.

We next turn to Hall's two-week suspension issued on August 1, 2007.  As IBC admits, this disciplinary action had an adverse effect on Hall's employment.  Therefore, with the first two prongs of the *McDonnell Douglas* analysis satisfied, we turn to the third factor to determine whether Hall was treated differently from other similarly situated employees.[28]

The crux of Hall's arguments regarding his suspension relate to his retaliation claim, which we address later in this opinion.  Even though Hall admits that he brought a BB-gun to work without permission on the dates in question, he claims that another caucasian employee, Ray, brought a .38 caliber handgun and a knife to work in the past but was not disciplined for doing so.  Hall, however, concedes that he has no knowledge as to whether IBC management was aware of this incident, and he himself did not report it to his supervisor or any other member of management.  It is unclear to

---

[27]We also note that Ray's 2008 and 2009 disciplinary actions occurred after Hall filed the instant lawsuit.

[28]*See McGowan*, 472 F.3d at 745.

this Court, and Hall has not explained, how he contends IBC should have disciplined an employee for a policy violation that it had no knowledge had even occurred. Accordingly, because IBC was not aware of Ray's violation, as it was with Hall's, we cannot find that Ray is an employee similarly situated with Hall. Therefore, Hall has failed to make out a prima facie case for discrimination based on this event.

Hall also claims that, on one occasion prior to his suspension, Ray also brought a stun gun to work, which to his recollection, Raphel witnessed. The record, however, is void of any evidence indicating whether any disciplinary action was or was not taken against Ray with respect to this incident. Because Hall fails to make argument or provide evidence either way, the Court will not infer any action or inaction taken by IBC with regard to this incident involving the stun gun. Hall is also unaware of any other employee within IBC that has brought a weapon to work. As a result, Hall has failed to establish a prima facie case with regard to this incident.

We conclude that Hall has failed to make out a prima facie case of discrimination with respect to his Title VII discrimination claims, and therefore, summary judgment is granted in favor of IBC on this claim.

Even if Hall established a prima facie case of discrimination, IBC has demonstrated a legitimate, non-discriminatory reason for the actions it took, and Hall has failed to satisfy his burden of showing such actions were pretextual. For each action, IBC has identified specific conduct where Hall violated company policy or improperly performed his job. In addition, for every instance where IBC took disciplinary action against Hall as a route sales representative, Hall has admitted to committing the very acts IBC claims warranted each disciplinary instance. Moreover, Hall admits

that none of these disciplinary actions were issued because of his race, and therefore, has failed to establish that said actions were the result of racial pretext.

Reviewing those disciplinary actions which occurred after Hall assumed the position of loader yields the same result. IBC has demonstrated that Hall committed acts of misconduct that led to each disciplinary action, and once again, Hall does not dispute that he committed those acts. Hall also admits that other than his subjective belief, he has no direct evidence indicating that any disciplinary action in and of itself was taken against him because of his race. Nevertheless, Hall asserts that IBC's actions were racially motivated, and therefore, pretextual.

In support of his claim, Hall argues that when viewing the actions taken against him as a whole, Raphel clearly treated him differently than other employees. Hall argues that this treatment, coupled with racial slurs he claims Raphel made about him to other employees, proves that the actions were racially motivated. Hall points to two different derogatory comments he claims Raphel made regarding his race. First, Hall claims that sometime in 2003-04, after being out in the rain, Raphel commented to him that when a black person's hair gets wet, it resembles a brillo or SOS pad. In response to Raphel's comment, Hall replied "Real funny, Al." Hall admits he did not submit a complaint about Raphel's comment to management, and other than this one comment, he never directly heard Raphel call him any other names that he considered racial. Hall claims that although he has not heard Raphel make any other derogatory comments about African-Americans, he was told by a co-worker that while he was on vacation, Raphel commented that Hall should have been fired and referred to him as a "nigger." Hall, however, has failed to cite to any evidence in the record in support of this claim other than to the allegations in his original complaint.[29] Moreover, he has failed

_____

[29]Hall cannot simply rely on the allegations in his complaint, but must present significant admissible probative evidence supporting his allegations. *Anderson*, 477 U.S. at 256.

to demonstrate any causal connection between these isolated incidents and the disciplinary actions IBC took against him.  As a result, Hall's proffered evidence is insufficient to defeat summary judgment.

Finally, we turn to Hall's termination.  IBC terminated Hall after he was involved in a verbal altercation with a caucasian coworker, Rosa, after which Hall left the depot against his supervisor's instruction and without permission, and without first completing his duties.   Hall alleges that Raphel once again treated him differently than his coworker during this incident.  Hall claims that while no action was taken against Rosa, he was told by Raphel to come into the office to provide a statement concerning the incident.[30]  IBC argues that Hall was not treated any differently than Rosa, as after the incident, Raphel spoke with Rosa, who remained at the facility, to obtain his account of the incident.  IBC asserts that Raphel called Hall after he left the depot to have him return, which Hall declined to do.  Hall's argument that Raphel obtained Rosa's statement while he would not take Hall's statement is disingenuous.  The record is clear that Hall had the opportunity to present his statement of the incident in question; however, he made the choice to leave the facility without providing one.  Hall has once again failed to establish any causal connection between the events leading to his termination and his race.

Therefore, based on the forgoing, we conclude that Hall has failed to provide sufficient evidence to establish a prima facie case of race discrimination, and even if he had established a prima facie case, has failed to establish that IBC's proffered reasons for its actions were pretextual so as to

---

[30]Hall admits that he did not follow Raphel's instruction.

sustain his claim.[31]   Accordingly, we grant summary judgment in favor of IBC with regard to Hall's Title VII discrimination claims.

   **b.  *Title VII Retaliation Claim***

   Hall brings a retaliation claim asserting that IBC disciplined and ultimately terminated him not because of his conduct, but did so in retaliation for a discrimination claim he filed with the EEOC and for filing the instant lawsuit.  IBC argues that summary judgment is appropriate because Hall cannot establish a prima facie case of retaliation.  IBC further argues that even if Hall can establish a prima facie case, he has no evidence to rebut it's reasons for the challenged actions.

   Title VII forbids an employer from retaliating against an employee because that employee "has opposed any practice made an unlawful employment practice" by Title VII or because that employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" pursuant to Title VII.[32]   Here, because Hall attempts to establish IBC's retaliatory conduct through indirect or circumstantial evidence, the *McDonnell Douglas* burden-shifting analysis applies.[33]   "To establish a prima facie case of retaliation, a plaintiff must demonstrate (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[34]   Once the plaintiff has made out a prima

---

   [31]*See Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (stating that "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings.  To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.").

   [32]42 U.S.C. § 2000e-3(a); *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-70 (2006).

   [33]*See McDonnell Douglas*, 411 U.S. at 802-04; *see also Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007).

   [34]*Argo*, 452 F.3d at 1202; *see Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67-70; *Montes*, 497 F.3d at 1176.

facie case, the employer must then "articulate a legitimate, nondiscriminatory reason for the adverse employment action."[35] If the employer articulates a legitimate reason for the action, then the plaintiff must demonstrate that the employer's asserted reasons are pretextual.[36]

Hall first alleges that IBC retaliated against him through improper discipline after he complained about racial discrimination to Harold Johnson ("Johnson"), an African American district manager at IBC, and after he filed an EEOC charge in May 2007. Hall claims that in January 2006, he complained to Johnson about what he perceived as improper disciplinary actions taken by Raphel against him because of his race. Hall subsequently filed a complaint with the EEOC in May 2007, alleging retaliation, discrimination based on his race, and for being subjected to a hostile work environment. Hall did not speak with management or file any complaint regarding racial discrimination prior to January 2006.

It is undisputed that Hall's filing of an EEOC charge is conduct protected from retaliation under Title VII, and as previously discussed, Hall's August 2007 suspension and October 2008 termination were adverse employment actions. However, Hall has failed to establish a causal connection between his EEOC complaint and either adverse action.[37] As a result, he has failed to establish a prima facie case of retaliation, and summary judgment on this claim is warranted.

Hall alleges that after first complaining to Johnson in January 2006 of racial discrimination, Raphel retaliated by issuing numerous disciplinary actions against him. Hall argues that IBC was

---

[35]*Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004).

[36]*Id.*

[37]While we do not specifically discuss the other disciplinary actions Hall received after either complaining of discrimination to Johnson or after filing his EEOC complaint, we have reviewed each alleged incident and conclude that he has made no causal connection between the protected action and any subsequent disciplinary action taken against Hall.

aware that he brought a BB-gun to work with him in December 2006, but despite that knowledge, did not take any action against him for this conduct until August 1, 2007, nearly 3 months after he filed his EEOC complaint.  Hall posits that IBC's delay in taking action against him is clear evidence of retaliation.  IBC, however, disagrees.

IBC does not dispute that it was aware that Hall brought a BB-gun to work with him in December 2006, but it asserts that Raphel discussed the situation with Hall and instructed him to stop bringing the BB-gun to work.  IBC contends that  it was not aware that Hall had continued to bring the gun to work with him until August 2007, after which it investigated the situation and then promptly issued the suspension.  IBC argues that Hall has provided no evidence to controvert its position on this issue, but simply relies on conjecture or speculation in an attempt to demonstrate that its decision to discipline him was pretextual.

Hall can show a causal connection through "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."[38] "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation."[39]  The Tenth Circuit has held that while a "one and one-half month period between protected activity and adverse action may, by itself, establish causation . . . a three-month period, standing alone, is insufficient to establish causation."[40]

---

[38] *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001).

[39] *Id.*

[40] *Id.*

Hall's claim that his suspension, imposed by IBC nearly 90 days after he filed his EEOC complaint, was retaliation is unpersuasive.  As the Tenth Circuit has indicated, Hall cannot simply rely on this three-month temporal proximity to support his claim, but instead must provide additional evidence between his suspension and the EEOC complaint to establish causation.[41]  Hall attempts to satisfy this requirement by alleging that IBC chose to discipline him for the December incident only after he filed his complaint, and, absent any additional actions taken by him.  Hall, however, has failed to present any evidence in support of this claim, nor does he provide any evidence in an attempt to establish pretext on the part of IBC.  In fact, Hall admits that he continued to bring the BB-gun to work with him after he was specifically instructed that doing so violated company policy.  Hall has presented no evidence indicating that IBC had knowledge that his conduct continued and of which he was not disciplined.  As a result, Hall has failed to establish a causal connection between this disciplinary action and his EEOC complaint or his complaints made to Johnson, and he has failed to establish that IBC's action was pretextual so as to maintain this claim.

Hall also argues that IBC terminated him in retaliation of his EEOC complaint, and further, for his filing the instant lawsuit.  Hall further argues that in addition to his EEOC complaint, his filing of the instant suit is activity protected by Title VII because the lawsuit is a result of that complaint.  We need not address that issue, however, as even if the instant lawsuit is a protected activity as Hall suggests, he has neither established a causal connection of the alleged retaliation to the lawsuit nor to his EEOC complaint.  Moreover, he has failed to establish pretext with regard to IBC's asserted legitimate reasons for its action; therefore, his retaliation claim cannot survive summary judgment.

---

[41]*See id.*

In support of his position, Hall claims that IBC terminated him while he was in the process of his depositions.  He further claims that the suspension and termination occurred after he filed the lawsuit, making the termination suspect.  Hall argues that IBC had repeatedly disciplined him in the past for improper job performance, but only while in the middle of the deposition process and after naming several witnesses involved in the discrimination did IBC terminate him.  Hall contends that because IBC failed to terminate him for the prior violations, terminating him for these same types of violations after he filed his EEOC complaint and the instant lawsuit is clear evidence of retaliation.  We disagree.

Hall was terminated on October 22, 2008, well over a year from filing his EEOC charge.  As a result, Hall must provide additional evidence between the EEOC complaint and his termination to establish causation, which he has failed to do.[42]  While it is true that Hall was in the deposition process when he was terminated, IBC has provided a legitimate reason for the termination, and Hall has failed to provide any evidence to establish pretext so as to withstand summary judgment.  Contrary to Halls position, neither filing an EEOC complaint nor a lawsuit immunizes an employee from unsatisfactory job performance or misconduct in the workplace.[43]  Hall received a number of verbal and written reprimands from both Raphel and other supervisors prior to his termination.  Simply because Hall filed the EEOC complaint or this lawsuit does not shield him from any subsequent disciplinary action by IBC, including termination, because of improper conduct or poor work performance.[44]  IBC asserts that it terminated Hall not because of the verbal altercation with

---

[42]*See id.*

[43]*See Jackson v. St. Joseph State Hosp.*, 840 F.2d 1387, 1391 (8th Cir. 1988), *cert denied*, 488 U.S. 892 (1988).

[44]*See id.*

Rosa directly, but because he failed to complete his job duties as instructed by his supervisor, and because he left the facility against his supervisor's instruction.  Hall has failed to demonstrate that IBC's proffered non-discriminatory reason for his termination is unworthy of belief, and therefore, has failed to establish pretext.[45]  Therefore, we grant summary judgment in favor of IBC with regard to Hall's retaliation claim.

### c. Hostile Work Environment

Hall alleges that IBC subjected him to a hostile work environment based on improper racial comments made by his supervisor, Raphel.  Hall claims that on one occasion in 2004, Raphel commented in his presence about a black person's hair resembling a brillo pad, after which Hall responded, "real funny, Al."  Hall further alleges that while he was on vacation, he was informed by another employee that Raphel made a racially derogatory comment about Hall when commenting that Hall should have been fired, but he admits that Raphel has not made a comment of this nature to him directly.  He also claims that while in his presence, he has heard Raphel use racial terms about persons of other nationalities, but he cannot recall any specific situation when these terms were used.  Hall admits that he did not complain about Raphel's use of these terms to management.  Hall also admits that the only evidence he has in support of his claim of hostile work environment are these isolated incidents, along with the fact that Raphel would not listen to him, and the fact that he received a verbal reprimand by Raphel for backing into a garage door.

To maintain a claim of a racially hostile work environment, a plaintiff must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently

---

[45]Hall also alleges retaliation through IBC's investigation of him regarding complaints by another employee, Marcia Carter, of improper conduct toward her.  After investigating, IBC took no action against Hall.  In addition, he claims IBC retaliated by lowering his pay, while at the same time admitting that IBC lowered his pay for business reasons and not in retaliation.  We find Hall's arguments without merit with respect to these allegations.

severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[46]  A "mere utterance of an . . . epithet which engenders offensive feelings in a employee" does not sufficiently affect the conditions of employment to implicate Title VII.[47]  In determining whether a work environment is racially hostile or abusive, the Court looks at all the circumstances, which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[48]

Here, we conclude that the work environment in which Hall was subjected was not so "permeated with discriminatory intimidation, ridicule, and insult" to rise to a Title VII violation.  Hall points to a limited number of isolated incidents in which he claims Raphel made improper racial remarks, of which he claims only one of those remarks, made sometime in 2003 or 2004,  was made directly to him and in regards to him.  Hall even admits that as of 2005, which is after Raphel made this comment, he felt as though Raphel was a father-figure to him.  Hall further admits that other than Raphel's comment about his hair during that one occurrence, Raphel has never called him any other names he has considered racial nor has he heard Raphel make any other derogatory comments about African-Americans.  As a result of the foregoing, we grant summary judgment in favor of IBC.

---

[46]*Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted).

[47]*Id.* (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986)).

[48]*Id.* at 23.

### d. Wrongful Termination

Hall alleges that he was wrongfully terminated based on the foregoing claims of discrimination, retaliation, and hostile work environment. Because we have determined that Hall cannot maintain those claims in which he bases this wrongful termination claim, no further analysis is required. Accordingly, we grant summary judgment in favor of IBC with respect to this claim.

## 2. Motion to Amend Scheduling Order and Pretrial Order

Hall seeks leave of the Court to allow him to amend the Pretrial Order in this action to add a charge of wrongful termination, and has provided both this Court and IBC a copy of a proposed Amended Complaint. IBC addressed Hall's wrongful termination allegation in its Motion for Summary Judgment prior to this Court ruling as to whether leave would be granted. This Court has also addressed Hall's additional allegation in its analysis. We therefore find that, based on this Court granting summary judgment in IBC's favor with respect to all claims, Hall's request to amend the Scheduling Order and Pretrial Order is denied as moot.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant Interstate Brands Corporation's Motion for Summary Judgment (Doc. 35) is hereby GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff Derek Hall's Motion to Amend Scheduling Order and Pretrial Order (Doc. 31) is hereby DENIED as moot.

**IT IS SO ORDERED.**

Dated this 13th day of July, 2009, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE